The **BAXTER STATE BANK, Plaintiff,**

v.

**Charles H. BERNHARDT and Shirley V. Bernhardt, Defendants.**

No. 96–2460–JWL.

United States District Court, D. Kansas.

Nov. 3, 1997.

Joseph Y. Holman, Holman, McCollum & Hansen, P.C., Prairie Village, KS, Frank B.W. McCollum, E. John Edwards, III, Holman, McCollum & Hansen, P.C., Kansas City, MO, for Baxter State Bank, plaintiff.

G. Michael Fatall, Kansas City, MO, for Charles H. Bernhardt, Shirley V. Bernhardt, defendants.

## *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

In this action, plaintiff seeks to recover from defendants on various personal guaranties of business loans made by plaintiff to a corporation that is not a party to this case. On May 22, 1997, the court held a hearing, at which it denied plaintiff's motion for summary judgment and permitted plaintiff to amend its complaint. The matter is presently before the court on plaintiff's renewed motion for summary judgment (Doc. 25) and defendants' motion for partial summary judgment on plaintiff's claim for contractual attorney fees (Doc. 26).

Plaintiff's motion for summary judgment is granted in part and denied in part. The motion is denied with respect to plaintiff's claims based on the 1989 guaranties signed by defendants for amounts due on the "SBA" and "SPM" loans. The motion is granted with respect to plaintiff's claims based on the 1989 guaranties for amounts due under the original operating loan. The motion is also granted with respect to plaintiff's claim based on the 1993 guaranty signed by defendant Charles Bernhardt.

Accordingly, judgment is ordered against Charles Bernhardt in the amount of $231,-280.99, with interest accruing hereafter at a rate of $52.95 per day, which amount accounts for the total balance due on all three loans based on the 1993 guaranty. In the alternative, Charles Bernhardt is liable on his 1989 guaranty in the amount of $126,-317.70, with interest continuing to accrue hereafter at a rate of $28.77 per day, which amounts represent the balance and interest due on the original operating loan. Judgment is also awarded against defendant Shirley Bernhardt on her 1989 guaranties in the amount of $126,317.70, plus interest hereafter at a rate of $28.77 per day.

Because the court concludes that the statute permitting contractual attorney fees in this context does not apply retrospectively, defendants' motion for partial summary judgment is granted, and plaintiff's claim for contractual attorney fees based on the 1989 guaranties is dismissed.

## I. Facts [1]

This action involves three loans made by plaintiff The Baxter State Bank (the Bank) to Engineering Reduction Systems, Inc. (ERS), a Kansas corporation owned by Ted Bernhardt and his wife, Mary Bernhardt. ERS manufactures tire-shredding equipment. Ted Bernhardt's parents, defendants Charles H. Bernhardt and Shirley V. Bernhardt, owned 50 percent of ERS until September 1, 1989 when they sold their interest to Ted and Mary Bernhardt and removed themselves from any participation in the business. Plaintiff now seeks to recover the amounts due on the three loans by enforcing three guaranties signed by Charles and Shirley Bernhardt in 1989 and one guaranty signed by Charles Bernhardt in 1993. Plaintiff also seeks to enforce a 1995 guaranty signed by Charles Bernhardt with respect to one of the loans, although that claim has not been made a part of plaintiff's present motion for summary judgment.

On May 4, 1989, plaintiff and ERS executed a promissory note by which plaintiff loaned ERS $150,000 (the operating loan).[2]

---

1. In accordance with the applicable summary judgment standard these facts are uncontroverted or related in the light most favorable to defendants.

2. In 1989, plaintiff also purchased from the FDIC two notes executed by ERS. Those notes were paid off by April of 1990, and they are not at issue in this case.

That loan was renewed on nine occasions over the next six years: October 19, 1990; January 17, 1991; January 27, 1992; July 25, 1992; January 28, 1993; November 10, 1993; May 9, 1994; November 5, 1994; and May 4, 1995. The last renewal note was in the principal amount of $100,100. The loan is now past due. As of March 1, 1997, the balance remaining on this loan was $100,020 in principal and $19,191.51 in interest, with interest accruing thereafter at a rate of $28.77 per day.

On April 27, 1990, plaintiff made a second loan to ERS, approved and guaranteed by the United States Small Business Association, in the amount of $342,000 (the SBA loan). This loan is also past due. As of March 1, 1997, a balance of $74,505.46 in principal and $8,848.15 in interest remained, with interest accruing thereafter at a rate of $20.91 per day.

On February 10, 1993, plaintiff made a third loan to ERS, secured by collateral from SPM, an ERS customer, in the amount of $100,020 (the SPM loan). This loan was renewed once in November of 1993. The renewed note is now past due, and as of March 1, 1997, a balance of $13,865.50 in principal and $771.72 in interest remained, with interest accruing thereafter at a rate of $3.27 per day.

On May 8, 1989, Charles Bernhardt and Shirley Bernhardt each signed unlimited guaranties, which guaranteed all present and future obligations of ERS to the Bank. Shirley Bernhardt also executed a guaranty guaranteeing her husband's unlimited guaranty.

After they sold their interest in ERS in September of 1989, Charles and Shirley Bernhardt decided that they no longer wished to be responsible for any future indebtedness of ERS. They instructed Ted Bernhardt to tell the Bank that they would not guarantee any future loans to ERS and that they did not wish to be responsible for any further debt beyond the $100,000 letter of credit they had given the Bank. Ted Bernhardt then told the Bank that his parents would honor their guaranties of the existing operating loan but that they would not guarantee additional loans.

In the original note and the first four renewals for the operating loan, Charles Bernhardt executed guaranties limited to that one loan. In each of those five instances, the note and corresponding security agreement were combined in a single form. Charles Bernhardt signed the provision on the reverse side that read as follows:

> **GUARANTEE:** By signing below, I unconditionally guarantee the payment of any amounts owed under this note and any security agreement. I also agree that all the other terms of the note and any security agreement apply to me.

The security agreement portion of the form included as secured property the "PERSONAL GUARANTEE OF CHARLES BERNHARDT".

The operating loan was renewed for a fifth time on January 28, 1993. For the first time, the Bank used separate forms for the note and the security agreement. The guaranty provision was no longer located on the reverse side of the note; instead, the same language and signature lines were typed in on the front of the note as an "additional term." Charles Bernhardt signed the guaranty provision. Moreover, the security agreement had an additional section for the first time, which required that one of two boxes be checked to denote whether the agreement secured a specific debt or all existing and future debts of ERS. In this case, the "All Debts" box was checked. As before, the secured property included the "PERSONAL GUARANTY OF CHARLES BERNHARDT". Finally, Mr. Bernhardt separately initialed the security agreement.

In this action, plaintiff has brought a claim to enforce this January 28, 1993 guaranty signed by Charles Bernhardt. Plaintiff contends that this guaranty is not limited to the operating loan but guarantees all three loans at issue. At his deposition, when asked whether he read the documents before sign-

ing on January 28, 1993, Charles Bernhardt testified as follows:

> I did, but apparently not too carefully because had I realized what that signature implied by the wording, I would not have accepted it. Particularly in view of the fact it's one of ten that I signed that had that kind of wording on it on the security agreement. I just missed it. I wouldn't have done it otherwise.[3]

The same note and security agreement forms were used the final four times the operating loan was renewed, except the guaranty provision was not typed onto the note. In each case, the "Specific Debt" box on the security agreement was checked, and the agreement only secured the obligation on the specific corresponding note. The secured property continued to include Charles Bernhardt's personal guaranty. Any accompanying guaranty was executed by Charles Bernhardt on a separate guaranty form.

With the sixth and seventh renewals of the operating loan on November 10, 1993 and May 9, 1994, the guaranty form that was provided to Charles Bernhardt had a box checked that made the guaranty applicable to all present and future debts of ERS. In each case, Charles Bernhardt altered the form to make the guaranty apply only to the corresponding renewal note before he signed it. No guaranty was signed with respect to the eighth renewal note, which was executed on November 9, 1994. For the last renewal on May 4, 1995, the separate guaranty indicated that it only guaranteed the specific loan, and Charles Bernhardt signed the form without alteration. The May 9, 1994 and May 4, 1995 guaranties also contained the following provision:

> 12. The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument evidencing or creating such other liability specifically provides to the contrary.

In 1989, when the operating loan to ERS was made, Charles Bernhardt had his bank in Ohio issue a standby letter of credit in the amount of $100,000 to plaintiff; the letter of credit was renewed every year until 1996. By its terms, the letter made $100,000 available to plaintiff upon presentation of evidence of any past due note guaranteed by Charles Bernhardt. On April 22, 1996, an attorney for Ted Bernhardt wrote a letter to plaintiff setting out a plan for repayment of the three loans. The letter stated that the $100,000 letter of credit would be called and would pay off the operating loan. On June 24, 1996, plaintiff demanded payment of the letter of credit, but applied the $100,000 to the SPM loan instead of the operating loan.

## II. Summary Judgment Standard

When considering a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party that also bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 536 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250,

---

3. The court notes this testimony because it believes that this acknowledgement candidly explains what happened here. It is not helpful to Mr. Bernhardt, of course, because he neither pled nor argued mistake as a basis for relief from the obligation and because his own testimony seems to concede plaintiff's interpretation of the document.

106 S.Ct. at 2511. Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2554 (quoting Fed. R.Civ.P. 1).

### III. Plaintiff's Claim Based on 1989 Guaranties

■ Plaintiff alleges that the three loans are in default and that defendants are liable for those balances based on their 1989 guaranties. Defendants respond that the unlimited guaranties were revoked in 1989 and therefore do not guarantee the SBA and SPM loans. Defendants concede that the 1989 guaranties make them liable for any outstanding balance on the operating loan, although, as discussed below, they dispute plaintiff's calculation of that balance.

The Kansas[4] Supreme Court has described the two types of guaranties:

A guaranty may be either continuing or restricted. The contract is restricted if it is limited to guarantee a single transaction or a number of specific transactions and is not effective for transactions other than those guaranteed. The contract is continuing if it contemplates a future course of dealing during an indefinite period or it is intended to cover a series of transactions or a succession of credits, or if its purpose is to give to the principal debtor a standing credit to be used by him from time to time. An offer for a continuing guaranty contract is ordinarily effective until revoked by the guarantor or extinguished by some rule of law.

*Iola State Bank v. Biggs,* 233 Kan. 450, 454, 662 P.2d 563 (1983). The parties agree that the 1989 guaranties signed by defendants, which expressly guaranteed all present and future debts of ERS, were continuing guaranties.

■ Kansas appellate courts have not discussed the revocation of a continuing guaranty other than in *Iola State Bank.* In that case, however, the Kansas Supreme Court clearly indicated that a continuing guaranty may be revoked. *Id.; see* Restatement (Third) of Suretyship and Guaranty § 16 (1996) (continuing guaranty terminable by notice to obligee); 38A C.J.S. *Guaranty* § 40 (1996) (unless containing provision to contrary, continuing guaranty may be revoked); 38 Am.Jur.2d *Guaranty* § 63 (1968) (same).

Kansas law concerning the revocation of a continuing guaranty was applied in *Deere & Co. v. Loy,* 872 F.Supp. 867 (D.Kan.1994), *aff'd,* 1995 WL 715505 (10th Cir. Dec.6, 1995). In that case, the debtor's father-in-law signed a continuing guaranty that required any revocation to be in writing; the debtor, on behalf of the guarantor, later sent a letter revoking the guaranty. *Id.* at 869. After a bench trial, the district court gave effect to the revocation. *Id.* at 870–72. The court concluded that, although guaranties must be in writing under the Kansas statute of frauds, revocations (unlike modifications) may be accomplished orally; they need be in writing only if the guaranty itself so requires. *Id.* In *Deere,* the guaranty required a written revocation, but it did not require that the writing be signed by the guarantor; thus, the debtor's letter on behalf of the guarantor was sufficient. *Id.* at 870. The district court then determined that a valid agency was formed to allow the debtor to revoke the guaranty for the guarantor. *Id.* at 871. The court ruled that, because the statute of frauds did not require a written revocation, the agency did not need to be in writing. *Id.* at 872.

The Tenth Circuit, in an unpublished opinion, affirmed the district court's decision "for substantially the same reasons contained in the district court's order." *Deere & Co. v. Loy,* 1995 WL 715505, at *2 (10th Cir. Dec.6, 1995). The Tenth Circuit ruled that, under Kansas law, contracts within the statute of frauds may be revoked orally, and that any agency to effect such revocation need not be created in writing. *Id.* at *1–2.

■ Thus, under Kansas law as interpreted by the federal courts, a continuing guar-

---

**4.** Kansas law clearly applies here; the various contracts were entered into in Kansas and contain Kansas choice of law provisions.

anty may be revoked orally, by means of an orally-created agency, unless more is required in the guaranty itself. *See* 38A C.J.S. *Guaranty* § 40 (continuing guaranty may be terminated only by compliance with its terms). In the present case, the 1989 continuing guaranties did not require that their revocation take any certain form.

Defendants argue that a question of fact remains concerning whether Ted Bernhardt, acting as their agent, orally revoked their continuing guaranties in September of 1989. Plaintiff contends that the evidence indicates that Ted Bernhardt only told plaintiff that his parents did not want to guarantee any future indebtedness, thereby restricting their liability to the $100,000 letter of credit. Plaintiff argues that defendants thus attempted to *limit* their continuing guaranties, not revoke them, and that such attempt was futile because a contract subject to the statute of frauds may not be modified orally. *See Deere*, 1995 WL 715505, at *2. Plaintiff claims that a revocation contemplates the termination of the entire relationship, while a modification suggests a continued course of dealing, as occurred here.

■ The court disagrees with plaintiff's interpretation of the effect of a revocation. The parties agree that if a continuing guaranty is revoked, the guarantor remains liable on loans made before the revocation. *See* Restatement (Third) of Suretyship and Guaranty § 16. Thus, the relationship between the creditor and the guarantor may continue even after revocation. In this case, the evidence, viewed in defendants' favor, indicates that defendants, through their agent, told plaintiff that they would not guarantee any future loans to ERS, but would continue to guarantee the operating loan. Although they may not have used the word "revoke", defendants' conduct would be sufficient to terminate the continuing nature of the guaranty. Thus, while they could not absolve themselves of liability on the existing operating

loan, they may have avoided liability on the loans that were not made until thereafter. Accordingly, a question of fact concerning whether defendants revoked their 1989 continuing guaranties exists which prevents plaintiff from obtaining summary judgment on its claims under the 1989 guaranties for amounts due on the SBA and SPM loans.[5]

## IV. Plaintiff's Claim Based on 1993 Guaranty

Plaintiff has also moved for summary judgment on its claim that Charles Bernhardt is liable for payment of all three loan balances on the basis of the guaranty he signed on January 28, 1993. Mr. Bernhardt raises two defenses: (1) the subsequent limited guaranties he signed "superseded" the 1993 guaranty, and (2) the 1993 guaranty does not unambiguously apply to all existing and future debts of ERS. The court rejects both defenses.

### A. Whether Superseded by Subsequent Guaranties

■ Mr. Bernhardt argues that the guaranties he signed in connection with three later renewals of the operating loan, which guaranties were limited to the operating loan, "superseded" the 1993 guaranty to the extent that it applied to other loans as well.[6] Plaintiff has provided no authority, however, to support the proposition that a new guaranty automatically extinguishes the guarantor's obligations under an earlier guaranty.

■ In fact, Kansas law appears to the contrary. In *Headley v. Post*, 120 Kan. 504, 243 P. 1042 (1926), the Kansas Supreme Court stated: "It seems to be well established that the giving of a new contract of guaranty and indemnity does not release the obligors of a similar former contract, unless the parties mutually so intended." *Id.* at 509, 243 P. 1042. That statement is in accord with the general rule. *See* 38A C.J.S. *Guaranty* § 95 ("For a guarantor to be re-

---

5. Although defendants have not raised the issue in their defense, the court would note that any attempt by defendants to limit their liability on the guarantees to $100,000 regardless of the balance of the operating loan would fail under Kansas law, which prohibits the oral modification of guaranties.

6. Mr. Bernhardt thus concedes that the 1993 guaranty at least obligates him on the operating loan, and plaintiff is entitled to summary judgment on such claim.

leased from liability by a subsequent guaranty, it must appear that the later guaranty was intended and accepted as a substitute of the former; otherwise the creditor may resort to both guaranties."); 38 Am.Jur.2d *Guaranty* § 85 (mere acceptance of a new guaranty does not extinguish a previous guaranty unless it is shown that the parties so intended).

█ Mr. Bernhardt has not pointed to any evidence indicating that a substituted guaranty was effected here. Under Kansas law, the substitution of a new obligation for an existing one, which is thereby extinguished, is a novation. *Davenport v. Dickson*, 211 Kan. 306, 310, 507 P.2d 301 (1973). "A novation is never presumed, and the burden is on the party asserting it to establish the essential requirements ." *Id.* There must be a clear and definite intention of the parties to extinguish the old obligation by substituting the new obligation. *Id.* The *Davenport* court held that no novation had been shown in that case because nothing in the new contract could be construed to contemplate a release from the old obligation; because the contract was unambiguous in that way, no parol evidence could be considered on the question of the parties' intent. *See id.*, at 312–13, 507 P.2d 301.

Similarly here, there is nothing in the subsequent guaranties to suggest that any former guaranties would be extinguished. In fact, the last two guaranties expressly provided that previous obligations were *not* extinguished. Nor is there any other evidence that plaintiff and Mr. Bernhardt intended that the later guaranties release him from his obligations under previous guaranties. Accordingly, plaintiff cannot establish a novation here, and the later guaranties do not "supersede" the January 28, 1993 guaranty.

█ The cases cited by Mr. Bernhardt on this issue are not helpful. *See International Harvester Credit Corp. v. Leaders*, 818 F.2d 655 (8th Cir.1987); *Rockwell Int'l Corp. v. Riddick*, 633 F.Supp. 276 (N.D.Ga.1986); *Maresh Sheet Metal Works v. N.R.G., Ltd.*, 304 N.W.2d 436 (Iowa 1981). Those cases did not address the issue of a guaranty's being extinguished; rather they considered the implied revocation of a continuing guar-

anty, and the courts in those cases held that the guaranty at issue had *not* been revoked. There is no Kansas authority suggesting that a continuing guaranty may be impliedly revoked. Moreover, even if the later guaranties are deemed to have revoked the continuing guaranty signed on January 28, 1993, Mr. Bernhardt would only be protected from *future* liability, and would remain liable on debts in existence at the time of the revocation. Because all three loans had been made by the time Mr. Bernhardt signed the next guaranty on November 10, 1993, he would still be liable on the January 28, 1993 guaranty for the balances on all three loans. Thus, a theory of implied revocation does not aid Mr. Bernhardt here.

### B. Whether Limited to Operating Loan

█ Charles Bernhardt also argues that there remains a question of fact concerning the intention of the parties with respect to the January 28, 1993 guaranty and whether the guaranty applies only to the operating loan. He points to the other limited guaranties executed by him as evidence of such intent. The court rejects this argument as well.

█ The construction of a written instrument is a question of law for the court. *Wagnon v. Slawson Exploration Co.*, 255 Kan. 500, 511, 874 P.2d 659 (1994). "The law of guaranty is a part of the law of contracts ...." *Iola State Bank*, 233 Kan. at 452, 662 P.2d 563.

> A contract of guaranty is to be construed, as other contracts, according to the intention of the parties as determined by reasonable interpretation of the language used, in light of the attendant circumstances. After the intention of the parties or the scope of the guarantor's undertaking has been determined by general rules of construction, the obligation is strictly construed and may not be extended by construction or implication.

*Id.* at 456, 662 P.2d 563.

█ "The intention of the parties and the meaning of the contract are to be determined from the instrument itself where the

terms are plain and unambiguous." *Wolfgang v. Mid–America Motorsports, Inc.,* 111 F.3d 1515, 1524 (10th Cir.1997) (applying Kansas law). "If a [guaranty] contract is unambiguous, the court can look only to the four corners of the agreement to determine the parties' intent, harmonizing the language therein if possible." *TMG Life Ins. Co. v. Ashner,* 21 Kan.App.2d 234, 242, 898 P.2d 1145 (1995). Extrinsic evidence may not be used to construe an unambiguous guaranty. *Id.*

■■■■■ "The language of a contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in the sense that the contract may be understood to reach two or more possible meanings." *McBride Elec., Inc. v. Putt's Tuff, Inc.,* 9 Kan.App.2d 548, 555, 685 P.2d 316 (1984) (construction of guaranty contract); *accord Wolfgang,* 111 F.3d at 1524; *Brown v. Lang,* 234 Kan. 610, 615, 675 P.2d 842 (1984). In determining whether a contract is ambiguous, the court must not read one part of the contract to the exclusion of another. *TMG Life Ins. Co.,* 21 Kan. App.2d at 249, 898 P.2d 1145.

In placing a construction on a written instrument reasonable rather than unreasonable interpretations are favored by the law. Results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided. The meaning of a contract should always be ascertained by a consideration of all the pertinent provisions and never be determined by critical analysis of a single or isolated provision. *Brown,* 234 Kan. at 615, 675 P.2d 842. The question of whether a guaranty is ambiguous is one of law for the court. *McBride,* 9 Kan.App.2d at 555, 685 P.2d 316; *see Weber v. Tillman,* 259 Kan. 457, 476, 913 P.2d 84 (1996).

The court concludes that the scope of the January 28, 1993 guaranty may not be determined from evidence outside the language of the note and security agreement because those documents unambiguously provide that the guaranty applies to all three outstanding loans. In reaching that conclusion, the court first notes that both the January 28, 1993 note and the corresponding security agreement must be considered together in their entirety. *See First Nat'l Bank of Hutchinson v. Kaiser,* 222 Kan. 274, 277, 564 P.2d 493 (1977) ("Where two instruments are executed by the same parties at or near the same time in the course of the same transaction, and concerning the same subject matter, they will be read and construed together.").

The guaranty signed by Charles Bernhardt expressly guarantees "the payment of any amounts owed under this note *and any security agreement."* (Emphasis added.) The security agreement, which Charles Bernhardt initialed, clearly secures all existing and future debts of ERS and not merely the debt evidenced by the note signed that day. Moreover, according to the terms of the security agreement, the property securing all ERS debts includes the guaranty of Charles Bernhardt; thus, if ERS has defaulted on any of the debts, plaintiff as the secured party may foreclose on that guaranty. A construction limiting the guaranty to that note would render both the guaranty's reference to the security agreement and the inclusion of the guaranty in the secured property superfluous.

Thus, the only construction that is reasonable and harmonizes all of the provisions of the two documents is one by which the guaranty applies to all ERS loans. The guaranty is therefore unambiguous and must be enforced according to that construction. Plaintiff is entitled to summary judgment against Charles Bernhardt on its claims to recover on all three loans on the basis of the 1993 guaranty.

### C. Application of Letter of Credit

■■■■ As stated above, defendants have conceded that they have not been relieved of their obligation concerning the original operating loan. They argue, however, that no balance should remain on that loan. Specifically, they contend that plaintiff should have applied the $100,000 letter of credit to the operating loan as they directed. Plaintiff instead applied the letter of credit to reduce the balance due on the SPM loan.

■■■■ The court concludes as a matter of law that plaintiff was not precluded from

applying the proceeds of the letter of credit as it did.[7] If multiple debts are owed to a creditor, the creditor may apply a payment as it chooses in the absence of direction from the debtor concerning application of the payment. *Dallas v. Dallas,* 236 Kan. 92, 95, 689 P.2d 1184 (1984); *Matter of Bulk Sale of Inventory, Furniture, Fixtures, Vehicles, and All Other Assets of Hart's Transfer & Storage, Inc.,* 6 Kan.App.2d 579, 581, 631 P.2d 258 (1981). Voluntary payments from a debtor must be applied as the debtor directs. *Ram Co. v. Estate of Kobbeman,* 236 Kan. 751, 756, 696 P.2d 936 (1985); *In re Hart's,* 6 Kan.App.2d at 581, 631 P.2d 258. That rule does not apply to *involuntary* payments, however, which may be applied as the creditor wishes. *In re Hart's,* 6 Kan.App.2d at 581–82, 631 P.2d 258; *see Ram Co.,* 236 Kan. at 756, 696 P.2d 936 (creditor may choose how to apply a payment if the money for the payment was security for the creditor's loan); 60 Am.Jur.2d *Payment* §§ 103, 123 (1987) (debtor may not direct application of involuntary payments, such as those constituting proceeds from collateral); 70 C.J.S. §§ 37, 42 (1987) (same).

In this case, the payment was involuntary. In essence, the standby letter of credit provided on behalf of Charles Bernhardt allowed plaintiff to call for payment from the issuing bank if any loan by plaintiff guaranteed by Mr. Bernhardt was in default. Thus, plaintiff's call of the letter of credit is analogous to a foreclosure on collateral, and the proceeds may be applied as the creditor desires. Moreover, the letter of credit expressly applied to *all* debts of Charles Bernhardt to plaintiff. Because Mr. Bernhardt was liable to plaintiff on the SPM loan by virtue of his 1993 guaranty, plaintiff did not act improperly in applying the proceeds of the letter of credit to the balance on that loan.

### V. Summary of Plaintiff's Claims

For the reasons set forth above, plaintiff is entitled to summary judgment against both defendants with respect to the operating loan on the basis of their three 1989 guaranties. Plaintiff's claims based on the 1989 guaranties as applied to the SBA and SPM loans survive to trial. Plaintiff is also entitled to summary judgment against Charles Bernhardt with respect to all three outstanding loans on the basis of his 1993 guaranty. Plaintiff has not moved for summary judgment on its claim under the 1995 guaranty of Charles Bernhardt, which applied only to the operating loan; that claim therefore remains for trial.

Defendants have not alleged that the outstanding balances computed by plaintiff are incorrect, except with respect to application of the letter of credit, which defense the court has rejected. Accordingly, the court enters judgment in favor of plaintiff based on the figures set out in plaintiff's amended complaint and memoranda. Plaintiff is awarded judgment against defendant Charles Bernhardt based on the January 28, 1993 guaranty in the total amount of $231,280.99, which constitutes the total outstanding principal and interest accrued through this date, November 3, 1997, for all three loans, with interest accruing hereafter in the total amount of $52.95 per day. Plaintiff could in the alternative recover $126,317.70, plus continuing interest of $28.77 per day, from Mr. Bernhardt under his 1989 guaranty as it applies to the operating loan. Plaintiff is also awarded judgment against Shirley Bernhardt on her 1989 guaranties in the amount of $126,317.70, which includes principal and interest on the operating loan through this date, with interest continuing to accrue hereafter at a rate of $28.77 per day.[8]

---

7. At the hearing on plaintiff's original motion for summary judgment, the court, relying solely on the letter to plaintiff from Ted Bernhardt's attorney concerning application of the letter of credit, raised the issue of whether plaintiff's actual application of the $100,000 was proper. The parties had not briefed the issue. Although the parties have still not cited any authority supporting their positions on this issue, the court has conducted its own research and, although finding no cases on point specifically dealing with letters of credit, it now concludes that plaintiff had the discretion to apply the proceeds as it saw fit.

8. Of course, plaintiff is not entitled to a double recovery by recovering for the same loan under different judgments or from different defendants.

### VI. Attorney Fees

 Defendants have moved for summary judgment on plaintiff's claim for attorney fees under fee provisions contained in the 1989 guaranties. Because the court agrees that those fee provisions are void and unenforceable under Kansas law, it grants defendants' motion.

In 1989, when the guaranties were signed, K.S.A. § 58-2312 provided that it was unlawful to contract for the payment of attorney fees in any note, that any such stipulation was null and void, and that courts could not award attorney fees regarding any promissory note or other evidence of indebtedness. K.S.A. § 58-2312 (1983). In *Iola State Bank,* the Kansas Supreme Court construed this statute to apply to guaranties. 233 Kan. at 464, 662 P.2d 563.

In 1994, the Kansas legislature amended K.S.A. § 58-2312. 1994 Kan. Sess. Laws ch. 276, § 3. The statute now provides that notes and other credit agreements may provide for the payment of reasonable costs of collection, including attorney fees. K.S.A. § 58-2312 (1994). Thus, the question here is whether the 1994 amendment applies to the 1989 guaranties retrospectively.

 The general rule in Kansas is that "a statute will operate prospectively unless its language clearly indicates that the legislature intended that it operate retrospectively." *Nitchals v. Williams,* 225 Kan. 285, 290, 590 P.2d 582 (1979). Such is the rule "when an amendment to an existing statute or a new statute is enacted which creates a new liability not existing before under the law or which changes the substantive rights of the parties." *Id.* at 290-91, 590 P.2d 582. This general rule is modified, however, and the statute is applied retrospectively, "where the statutory change is merely procedural or remedial in nature and does not prejudicially affect the substantive rights of the parties." *Id.* at 291, 590 P.2d 582.

Plaintiff relies on *Nitchals* in arguing that the 1994 amendment to section 58-2312 applies retrospectively. *Nitchals* involved K.S.A. § 40-3113, which provided for the reimbursement of a PIP insurer for benefits paid to an insured who later recovered from a third party. *Nitchals,* 225 Kan. at 287, 590 P.2d 582. In 1977, the Kansas Supreme Court construed that statute to mean that no deduction should made in the reimbursement to account for attorney fees incurred by the insured. *Id.* (citing *Easom v. Farmers Ins. Co.,* 221 Kan. 415, 560 P.2d 117 (1977)). Later in 1977, the legislature repealed section 40-3113 and enacted 40-3113a. *Id.* 225 Kan. at 288, 590 P.2d 582. The new statute gave the PIP insurer a subrogation right against the insured's recovery and authorized district courts to allocate attorney fees proportionately between the insurer and the insured. *Id.* at 288-89, 590 P.2d 582.

In *Nitchals,* the supreme court held that the new statute applied retrospectively. *Id.* 225 Kan. at 294, 590 P.2d 582. The court stated: "In similar cases, the courts have usually held that statutory changes allowing the recovery of attorney fees and expenses of litigation are procedural or remedial in nature and, therefore, may be applied retrospectively to pending cases." *Id.* at 292, 590 P.2d 582. After reviewing cases from other jurisdictions as well as Kansas cases, the court concluded that the new statute did involve a matter of procedure or remedy and should be applied retrospectively, unless such application would impair an insurer's vested substantive right. *Id.* at 294, 590 P.2d 582. Thus, the court applied the attorney fee provision only in cases where the insured recovered from the third party after the date of enactment of the new statute. *Id.* at 294-95, 590 P.2d 582.

Without any separate analysis, one federal court in this district has ruled that K.S.A. § 58-2312 is remedial in nature and therefore applies retrospectively. *See Benedictine College, Inc. v. Century Office Products, Inc.,* 868 F.Supp. 1239, 1242 (D.Kan.1994). To support its conclusion, the court in *Benedictine* cited the statement by the *Nitchals* court that "statutory changes allowing the recovery of attorney fees and expenses of litigation are procedural or remedial in nature." *Id.* (citing *Nitchals,* 225 Kan. at 292, 590 P.2d 582).

In reaching its conclusion, the *Benedictine* court did not have the benefit of the Kansas Court of Appeals's recent opinion in *Ryco*

*Packaging Corp. v. Chapelle International,* 23 Kan.App. 2d 30, 926 P.2d 669 (1996), *review denied* (Kan. Feb. 4, 1997). In *Ryco,* the court held that section 58–2312 applies only prospectively and so did not apply to a guaranty signed before 1994. *Id.* at 45, 926 P.2d 669. The court distinguished *Nitchals:*

> In *Nitchals,* the insurance carrier's rights to subrogation were primarily statutory in nature. Therefore, the amendment of the statute was, in effect, remedial in nature. Moreover, the insurance company's rights were not vested at the time of the amendments.

*Id.* The court concluded:

> In this case, the liability in issue is limited to the language of the contract.... At the time the contract was signed in this case, Kansas statutes nullified the attorney fee provision and made that provision void and unenforceable. The guarantors' liability, therefore, was limited to the underlying debt and interest thereon.
>
> To permit retroactive application of K.S.A. 58–2312 would, in essence, resurrect the attorney fee provision which was void at the time it was signed. Retroactively applying the statute results in an increase in the obligations assumed by the guarantors long after the documents were signed and after [the debtor] went into default. This circumstance makes the statutory amendment more substantive than procedural or remedial, and, thus, [the amendment] operates prospectively.

*Id.*

The court agrees with this reasoning, and it concludes that the Kansas Supreme Court would follow *Ryco* and hold that section 58–2312 applies only prospectively.[9] *Nitchals* involved a statutory right with a statutory authorization of attorney fees. This statute, however, originally prohibited fee provisions and fee awards and made such provisions null and void. The amendment removed this prohibition. This change permitting contractual fee provisions is significantly different from the change in *Nitchals* to authorize discretionary fee awards by courts. As concluded in *Ryco,* the change is substantive and not merely procedural or remedial.

Plaintiff contends that the cases cited by the court in *Nitchals* as well as a number of cases from other jurisdictions support its position that the amendment should apply retrospectively. The courts in those cases concluded that new statutes permitting fee awards were remedial in nature. None of those cases, however, involved the removal of a statutory prohibition against contractual fee provisions. The present case it thus fundamentally different because a new contractual liability has been created where such liability did not exist before—and in fact had been expressly prohibited—under the law. Under the rules set out in *Nitchals,* such a change is substantive and not merely procedural or remedial. 225 Kan. at 290–91, 590 P.2d 582.

Because the fee provisions in the 1989 guaranties were prohibited when made and are null and void, defendants are entitled to summary judgment on plaintiff's claim for fees under those provisions.[10]

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion for summary judgment (Doc. 25) is granted in part and denied in part. The motion is denied with respect to plaintiff's claims based on the 1989 guaranties for amounts due on the SBA and SPM loans. The motion is granted with respect to plaintiff's claims based on the 1989 guaranties for amounts

---

9. "In the absence of a state supreme court ruling, a federal court must follow an intermediate state court decision unless other authority convinces the federal court that the state supreme court would decide otherwise." *Delano v. Kitch,* 663 F.2d 990, 996 (10th Cir.1981).

10. Defendants have not moved for summary judgment on plaintiff's claim for fees under the 1993 guaranty, but because that guaranty was signed before the 1994 amendment of section 58–2312, such claim is futile. Plaintiff is correct in stating that it could enforce the fee provision in the 1995 guaranty, although that guaranty is not before the court in this motion. The court notes, however, that fees under the provision in the 1995 guaranty would be limited to those reasonably necessary for the collection of the operating loan because the guaranty applied only to that loan. Because defendants have conceded throughout this litigation that they are liable for any balance on the operating loan, any award of fees to collect on that loan would likely be small.

due under the original operating loan. Plaintiff's motion is further granted with respect to its claim based on the 1993 guaranty signed by defendant Charles Bernhardt.

**IT IS FURTHER ORDERED BY THE COURT THAT** judgment is ordered in favor of plaintiff against defendant Charles Bernhardt in the amount of $231,280.99, with interest accruing hereafter at a rate of $52.95 per day.

**IT IS FURTHER ORDERED THAT** judgment is ordered in favor of plaintiff against defendant Shirley Bernhardt in the amount of $126,317.70, with interest accruing hereafter at a rate of $28.77 per day.

**IT IS FURTHER ORDERED THAT** defendants' motion for partial summary judgment with respect to attorney fees (Doc. 26) is granted, and plaintiff's claim for an award of contractual attorney fees based on the 1989 guaranties is dismissed.

**IT IS SO ORDERED.**